IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:13-CR-214-1 |
| | ) | |
| BERNIC LEE ALSTON-CURRIE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant-inmate, Bernic Alston-Currie, has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), asking the Court to reduce his sentence to time served. Mr. Alston-Currie is serving a substantial sentence for a violent crime spree involving fifteen armed robberies and three armed attempted robberies. Even considering his history and his evidence of rehabilitation, the § 3553(a) factors do not support immediate release. Mr. Alston-Currie's motion seeking a sentence reduction to time served is denied and his motion will otherwise be denied without prejudice.

### I. Procedural History

Mr. Alston-Currie is serving a 456-month sentence for two firearms offenses and conspiracy to commit Hobbs Act robbery. Doc. 54 at 2. He filed the pending motion for compassionate release in November 2021, arguing primarily that the statutory sentencing changes to § 924(c) convictions constitute extraordinary and compelling circumstances supporting a reduction in his sentence. Doc. 178, *as supplemented* Doc. 189. The Court appointed counsel and ordered development of the record. Docs. 180, 184, 188.

## II. Crimes of Conviction and Sentencing

Between October 2012 and February 2013, Mr. Alston-Currie, with various co-defendants, went on a violent crime spree, robbing or attempting to rob 18 businesses in Durham. Doc. 109 at ¶¶ 24–41.[1] During each robbery, Mr. Alston-Currie brandished a firearm. *Id.*

The robberies were extremely violent. Mr. Alston-Currie, in tandem with his co-defendants, entered the businesses wearing masks and gloves and carrying firearms. *Id.* at ¶¶ 24–32, 34–39, 41. Mr. Alston-Currie threatened victims at gun point, *id.* at ¶¶ 24–25, 28–29, 31, 34–36, 38–39, hit and pushed them, *id.* at ¶¶ 26, 29, and struck the back of a victim's head with his gun. *Id.* at ¶ 35. During one robbery, Mr. Alston-Currie and a co-defendant fired shots into a store, seriously injuring a victim. *Id.* at ¶ 40. In multiple robberies, victims shot firearms at Mr. Alston-Currie and his co-defendants as they fled the scene. *Id.* at ¶¶ 31, 41. Before one robbery, Mr. Alston-Currie and his co-defendants carjacked a vehicle to serve as the getaway car. *Id.* at ¶ 41. Over a short four-month period, Mr. Alston-Currie stole at least $45,000. *Id.* at ¶¶ 24–41.

Mr. Alston-Currie was arrested in February 2013, *id.* at ¶ 50, and was indicted in May 2013. Doc. 1. In a superseding indictment delivered in July 2013, he was charged with fifteen counts of Hobbs Act robbery, three counts of attempted Hobbs Act robbery, eighteen counts of brandishing or discharging a firearm in connection with a crime of violence under 18 U.S.C. § 924(c), and one count of Hobbs Act conspiracy. Doc. 32.

---

[1] The Court adopted the presentence report without objection by Mr. Alston-Currie, Doc. 109 at 39, and without change. Doc. 110.

In September 2013, Mr. Alston-Currie pled guilty to one count of Hobbs Act conspiracy (Count 37) and two counts of brandishing a firearm during and in relation to a crime of violence under § 924(c) (Counts 22 and 28). Doc. 45; Minute Entry 09/27/2013. The government agreed to dismiss the remaining counts. Doc. 45 at ¶ 5.

Based on the law at the time, Mr. Alston-Currie's first § 924(c) count carried a statutory mandatory minimum sentence of 84 months (seven years), and his second § 924(c) count triggered a 300-month (25 year) mandatory minimum consecutive sentence. 18 U.S.C. § 924(c) (2012). The statutory maximum on each count was, *id.*, and is, not more than life. 18 U.S.C. § 924(c)(1)(A)(ii). If Mr. Alston-Currie had pled guilty to or been convicted of the remaining sixteen § 924(c) counts for which he was charged, each count would have carried a mandatory minimum 25-year consecutive term of imprisonment. Doc. 109 at ¶ 241.

For the conspiracy count, Mr. Alston-Currie's total offense level was 33 and his criminal history category was III. *Id.* at ¶ 240. He received upward adjustments for abducting and restraining victims during the robberies, *id.* at ¶¶ 91, 104, 111, 118, 125, 180; shooting and seriously injuring a victim, *id.* at ¶¶ 192–93; and committing a carjacking. *Id.* at ¶ 200. The sentencing guidelines suggested a 168-to-210-month sentence for the conspiracy count, imposed consecutively with an 84-month sentence for his first § 924(c) count and a 300-month sentence for his second § 924(c) count—a total of between 552 and 594 months. *Id.* at ¶ 240.

The Court imposed a 456-month sentence—72 months on the Hobbs Act conspiracy count and mandatory consecutive terms of 84 months and 300 months for his

§ 924(c) offenses. Doc. 54. As to the conspiracy count, the Court varied below the advisory guideline range of 168 to 210 months based on the length of Mr. Alston-Currie's mandatory sentences, his age, and his mental health history and to avoid unwarranted sentencing differences among co-defendants. Doc. 110 at 3.

### III. Other Relevant Facts

Mr. Alston-Currie committed most of the fifteen robberies and three attempted robberies when he was 27 years old, and a few after he turned 28. Doc. 109 at 3. Before the robberies, Mr. Alston-Currie's criminal history was short but serious. At age 16, he committed felony second-degree murder and received a 114-to-146-month sentence. *Id.* at ¶ 214. He was released in March 2012 and began committing the crimes of conviction less than a year later, while on state post-release supervision. *Id.*

Mr. Alston-Currie had a traumatic upbringing. His parents had substance abuse problems, *id.* at ¶¶ 226–27, and he was sexually abused as a child. *Id.* at ¶ 230. Around age 8, he was removed from his mother's home and placed in foster care. *Id.* At age 11, he joined the Crips street gang. *Id.* at ¶ 231. He began using drugs and alcohol at age 13. Doc. 179 at 2.

Mr. Alston-Currie is now 37 years old. Doc. 109 at 3. He is currently scheduled for release in August 2046. *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Apr. 18, 2022).

While incarcerated, Mr. Alston-Currie has worked in food services as a cook and has received positive work evaluations. Doc. 192. He has had one disciplinary infraction, phone abuse, since he began serving his sentence in 2013. *Id.* He has

4

completed over 1,500 hours of educational programming and has been working to obtain his GED. Doc. 179 at 8. By all accounts, he does well within the structured prison environment.

Mr. Alston-Currie has severe chronic mental illnesses. He has schizoaffective disorder, antisocial personality disorder, and post-traumatic stress disorder, *id.* at 7, for which he is on medication. *Id.* at 5–7. He successfully completed the Step Down Program, which is a long-term residential program for chronically mentally ill offenders in the BOP. Doc. 191 at 2–3. His discharge report from the program reflects he made significant progress in his personal development and mental health. *Id.* at 3–4, 6.

If released, Mr. Alston-Currie would like to be released to TROSA, a long-term substance abuse treatment center in Durham. Doc. 178 at 5; Doc. 189 at 7. To be accepted, Mr. Alston-Currie must complete a letter of interest to TROSA, a psychiatric evaluation, phone interview, and an assessment. Doc. 192 at 2. The Probation Office reports that the TROSA program would be suitable for supervision purposes if Mr. Alston-Currie is accepted. *Id.*

### IV. The First Step Act Amends § 924(c)

In 2018, Congress passed the First Step Act, which, among other things, amended § 924(c) so that the 25-year mandatory minimum for a second or subsequent offense applies only if the offense occurs after a prior § 924(c) conviction has become final. First Step Act, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (2018); *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020). If charged with the same crimes today, Mr. Alston-Currie would not face multiple mandatory consecutive 25-year sentences, but he

would face multiple mandatory seven-year sentences as to the Hobbs Act robberies.[2] *See* 18 U.S.C. § 924(c)(1)(A)(ii). The changes to this provision of the First Step Act do not apply retroactively. *See* § 403(b), 132 Stat. at 5222; *Jordan*, 952 F.3d at 174.

## V.   Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart."). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits it to do so. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

In order for a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement, when invoked by the government. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). Mr. Alston-Currie has satisfied the exhaustion requirement. *See* Doc. 193 at 2 (government conceding exhaustion); Doc. 179 at 12–13 (proof of exhaustion).

The statute also requires that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with applicable policy statements issued by the

---

[2] The § 924(c) mandatory minimum sentences would probably not be available today as to the three Hobbs Act attempted robberies. *See United States v. Taylor*, 979 F.3d 203, 210 (4th Cir. 2020), *cert. granted*, 141 S. Ct. 2882 (2021).

6

Sentencing Commission, and that the § 3553(a) sentencing factors merit a reduction. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020).[3] The facts relevant to these requirements overlap a fair bit, *see United States v. Newell*, No. 13-CR-165-1, 2021 WL 3269650, at *6 n.28 (M.D.N.C. July 30, 2021), and "[d]ecisions about whether a particular defendant's sentencing factors support release are made in light of his specific extraordinary and compelling reasons, not separate from those reasons." *United States v. Beck*, No. 13-CR-186-5, 2021 WL 260402, at *4 (M.D.N.C. Jan. 26, 2021).

Defendants serving stacked § 924(c) sentences are not automatically entitled to a sentence reduction under § 3582(c)(1)(A), and "not *all* defendants convicted under § 924(c) should receive new sentences." *McCoy*, 981 F.3d at 287. But on a "case-by-case basis," the change in that sentencing law, combined with other factors, can be extraordinary and compelling reasons warranting such a reduction. *See id.* at 285–86;[4] *United States v. Curry*, No. 05-CR-282, 2021 WL 2644298, at *4 (M.D.N.C. June 25, 2021). The individualized assessment can include consideration of, for example, a

---

[3] The Sentencing Commission has not yet adopted any policy statement applicable to motions filed directly by defendants. *See McCoy*, 981 F.3d at 282. The Court considers the old policy statement applicable to motions brought by BOP as helpful but non-binding guidance. *See id.* at 282 n.7.

[4] The Tenth Circuit and Sixth Circuit have agreed with the Fourth Circuit about the non-retroactive changes to § 924(c). *See United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021); *United States v. Owens*, 996 F.3d 755, 762–64 (6th Cir. 2021) (collecting cases). Other circuits disagree. *See United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022); *United States v. Thacker*, 4 F.4th 569, 574–75 (7th Cir. 2021); *United States v. Andrews*, 12 F.4th 255, 260–61 (3d Cir. 2021).

defendant's age at the time of the crimes, rehabilitation, length of sentence served, and institutional record. *See McCoy*, 981 F.3d at 288; *Curry*, 2021 WL 2644298, at *4–6.

As noted *supra*, had Mr. Alston-Currie been sentenced for two § 924(c) counts today, the second § 924(c) conviction would carry a seven-year mandatory minimum sentence rather than a 25-year mandatory minimum sentence. Thus, the statutory minimum penalty for his two § 924(c) convictions would be 14 years rather than 32 years. Factoring in Mr. Alston-Currie's 72-month sentence for Hobbs Act conspiracy, that would be a total sentence of 20 years.

But that is a hypothetical result that verges on fantasy. Mr. Alston-Currie did not contest his guilt to the charged crimes, which included fifteen counts of Hobbs Act robberies, three counts of Hobbs Act attempted robberies, eighteen § 924(c) counts, and one count of Hobbs Act conspiracy. Doc. 109 at ¶¶ 1–19. His plea agreement and resulting sentence took his guilt of all those crimes into account. Over the course of 15 robberies and three attempted robberies, Mr. Alston-Currie threatened victims at gunpoint, struck multiple victims, shot and seriously injured someone, and endangered many lives. *Id.* at ¶¶ 24–41. These were extremely serious and violent crimes; it is a miracle no one was killed. Even considering that three of the brandishing charges might be inappropriate under current law, *see supra* n.2, it is not certain that the government would have offered the same plea agreement if the law then was the same as it is now.

Even if the government did offer the same plea agreement, the Court might not have varied below the guidelines on the Hobbs Act conspiracy count. The Court explicitly stated that it varied below the advisory guideline range of 168 to 210 months

8

and imposed a 72-month sentence on the conspiracy count because, as the Court put it at sentencing, the § 924(c) "mandatory sentences are effectively a life sentence." Doc. 110 at 3. So, Mr. Alston-Currie's total sentence has already been decreased in recognition of the harsh mandatory minimums in the prior § 924(c) sentencing scheme.

Also, applying today's § 924(c) mandatory minimums, there is no guarantee the Court would have imposed only the seven-year minimum sentence as to the two § 924(c) counts. The statute then, as now, authorizes a substantially longer sentence. And the presentence report covered each of the 15 robberies and three attempted robberies, which the sentencing court may consider in fashioning an appropriate sentence. *See United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994) ("The defendant need not be convicted of the charges constituting relevant conduct for him still to be held accountable for them."). At bottom, it was the facts—not the mandatory sentences or the guideline range—that the undersigned sentencing court considered to ensure the plea agreement and the resulting sentence it contemplated produced a sentence that was "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

Mr. Alston-Currie has a strong record of rehabilitation, and the Court commends him for the positive progress he has made while incarcerated. *See McCoy*, 981 F.3d at 286 n.9 (noting successful rehabilitative efforts are "one among other factors under § 3582(c)(1)(A)(i)" that support finding extraordinary and compelling reasons to grant

9

relief).[5] He has made great strides in managing his mental illness, completing a long-term residential treatment program and maintaining an effective medication regimen. *See* Doc. 191; Doc. 179 at 5–7. He has completed over 1,500 hours of educational programming and has worked to get his GED. Doc. 179 at 8. He works in BOP food services as a cook and receives positive work evaluations. Doc. 192. And he only has one disciplinary infraction since 2013. *Id.*

Even taking these facts into account, however, extraordinary and compelling reasons do not exist for a sentence reduction to time served and the § 3553(a) factors do not support immediate release. Mr. Alston-Currie has served approximately nine years of his 38-year sentence. Even assuming the Court imposed today's seven-year mandatory minimums as to his two § 924(c) counts and a 72-month sentence on his conspiracy count, he would have completed less than half his 20-year sentence by now. Such a sentence would not come close to accounting for Mr. Alston-Currie's violent criminal history and the number, severity, and violence of Mr. Alston-Currie's crimes. Even considering Mr. Alston-Currie's impressive evidence of rehabilitation and his difficult personal history, reducing his sentence to time served would not reflect the seriousness of his offenses, provide just punishment, deter similar conduct, or show respect for the law. To the extent Mr. Alston-Currie asks for a time served sentence, the motion is denied.

---

[5] While rehabilitation may be considered in the extraordinary and compelling reasons analysis, Congress has specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for sentence reduction. 28 U.S.C. § 994(t).

To the extent he asks for his sentence to be reduced to something less than his current sentence but more than time served, the Court will deny the motion without prejudice. Rather than decide now whether a sentence reduction is appropriate and, if so, the extent, the Court concludes it is better to deny the motion without prejudice to a renewed motion when Mr. Alston-Currie is closer to serving a sentence that the Court could even begin to presently contemplate as sufficient. *See United States v. Hancock*, No. 06-CR-206-2, 2021 WL 848708, at *4–6 (M.D.N.C. Mar. 5, 2021) (denying compassionate release motion to reduce defendant's § 924(c) stacked sentences without prejudice to later renewal); *United States v. Berry*, No. 05-CR-118, 2021 WL 4310598, at *5 (M.D.N.C. Sept. 22, 2021) (same).

While at the moment the Court sees no reason for a sentence reduction at all, it is possible the landscape will change as the case law develops and the Sentencing Commission provides guidance on how to evaluate these kinds of motions, as contemplated by Congress. *See McCoy*, 981 F.3d at 284 (noting that when the Sentencing Commission enacts guidance "courts will be required to ensure that any sentence reductions granted on defendants' motions are consistent with that guidance"). Mr. Alston-Currie will have time to take further steps towards positive rehabilitation efforts and to avoid further disciplinary sanctions.

## VI. Conclusion

The compassionate release statute is appropriately invoked only in unusual cases or, as the Fourth Circuit put in *McCoy*, the "most grievous cases." *Id.* at 287. It should not become a vehicle for wholesale and repeated reconsideration of sentences in violation

of the general rule of finality.  *See Goodwyn*, 596 F.3d at 235 (collecting cases).  Mr. Alston-Currie committed many violent and serious offenses for which he is serving a substantial but earned sentence.  Because the § 3553(a) factors do not support immediate release, his motion for a sentence reduction to time served will be denied, and his motion will otherwise be denied without prejudice.

It is **ORDERED** that the defendant's motion to reduce sentence, Doc. 178, is **DENIED**.

This the 20th day of April, 2022.

_____
UNITED STATES DISTRICT JUDGE