IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:13-CR-214-1 |
| | ) | |
| BERNIC LEE ALSTON-CURRIE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

The defendant-inmate, Bernic Alston-Currie, is serving a 456-month sentence for his involvement in a violent crime spree including 15 armed robberies and three attempted armed robberies. He seeks a sentence reduction to 240 months pursuant to § 3582(c)(1)(A) based on a non-retroactive statutory change in the length of stacked § 924(c) sentences and his participation in a gang dropout program.

For the reasons that follow, the Court finds that there are no extraordinary and compelling circumstances and that the § 3553(a) factors do not support a sentence reduction. The motion will be denied.

## I.    Crimes of Conviction and Sentencing

Between October 2012 and February 2013, Mr. Alston-Currie, with various co-defendants, robbed or attempted to rob 18 businesses in Durham, North Carolina. Doc. 109 at ¶¶ 24–41.[1] During each robbery, Mr. Alston-Currie brandished a firearm. *Id.*

---

[1] The Court adopted the presentence report without objection by Mr. Alston-Currie, Doc. 109 at 39, and without change. Doc. 110 at 1.

The robberies were dangerous, brutal, and terrifying. Mr. Alston-Currie, along with his co-defendants, entered the businesses wearing masks and gloves and carrying firearms. *Id.* at ¶¶ 24–32, 34–39, 41. He threatened victims at gunpoint, *id.* at ¶¶ 24–25, 28–29, 31, 34, 36, 38–39, hit and pushed them, *id.* at ¶¶ 26, 29, and struck the back of one victim's head with his gun. *Id.* at ¶ 35. During one attempted robbery, Mr. Alston-Currie and a co-defendant fired shots into a store, seriously injuring a victim. *Id.* at ¶ 40. In multiple robberies, victims shot firearms at Mr. Alston-Currie and his co-defendants as they fled the scene. *Id.* at ¶¶ 31, 41. Before one robbery, Mr. Alston-Currie and his co-defendants carjacked a vehicle to serve as the getaway car. *Id.* at ¶ 41. Over a short four-month period, Mr. Alston-Currie stole at least $45,000. *Id.* at ¶¶ 24–41.

Mr. Alston-Currie was arrested in February 2013, *id.* at ¶ 50, and was indicted in May 2013. Doc. 1. In a superseding indictment, he was charged with 15 counts of Hobbs Act robbery, three counts of attempted robbery, 18 counts of brandishing or discharging a firearm in connection with a crime of violence under 18 U.S.C. § 924(c),[2] and one count of Hobbs Act conspiracy to commit all the various robberies. Doc. 32.

In September 2013, Mr. Alston-Currie pled guilty pursuant to a plea agreement to one count of Hobbs Act conspiracy (Count 37) and two counts of brandishing a firearm during a crime of violence under § 924(c) (Counts 22 and 28). Doc. 45; Minute Entry 09/27/2013. The government agreed to dismiss the remaining counts. Doc. 45 at ¶ 5.

---

[2] If this case was brought today, the government would likely be unable to pursue the three § 924(c) charges based on the attempted armed robberies. The Supreme Court has since held that attempted armed robbery cannot support a § 924(c) conviction. *See United States v. Taylor*, 596 U.S. 845, 860 (2022).

Based on the law at the time, Mr. Alston-Currie's first § 924(c) count carried a statutory mandatory minimum sentence of seven years (84 months), and his second § 924(c) count triggered a consecutive mandatory minimum sentence of 25 years (300 months). 18 U.S.C. § 924(c)(1)(A)(ii), (C)(i) (2012). The statutory maximum on each § 924(c) count was, and is, not more than life, since the statute, both then and now, does not contain a statutory maximum. *Id.*; 18 U.S.C. § 924(c)(1)(A)(ii), (C)(i).

For the conspiracy count, Mr. Alston-Currie's total offense level was 33, and his criminal history category was III. Doc. 109 at ¶ 240. He received upward adjustments for abducting and restraining victims during the robberies, *id.* at ¶¶ 91, 104, 111, 118, 125, 180; shooting and seriously injuring a victim, *id.* at ¶¶ 192–193; and committing a carjacking. *Id.* at ¶ 200. The sentencing guidelines suggested a 168- to 210-month sentence for the conspiracy, imposed consecutively with an 84-month sentence for his first § 924(c) count and a 300-month sentence for his second § 924(c) count, for a total recommended sentence of between 552 and 594 months. *Id.* at ¶ 240.

As to the conspiracy count, the Court varied below the advisory guideline range of 168 to 210 months based on the length of Mr. Alston-Currie's mandatory sentences, his age, and his mental health history, and to avoid unwarranted sentencing differences among co-defendants. Doc. 110 at 3. The Court imposed a total sentence of 456 months—72 months on the Hobbs Act conspiracy count and mandatory consecutive terms of 84 months and 300 months for his § 924(c) offenses.[3] Doc. 54.

---

[3] The undersigned was the presiding judge at Mr. Alston-Currie's sentencing.

## II.    The First Step Act Changes the Law for Stacked § 924(c) Convictions

In addition to the conspiracy count, Mr. Alston-Currie pled guilty to two counts of brandishing a firearm in connection with a crime of violence under § 924(c)(1)(A)(ii). Doc. 45 at ¶¶ 1–2.  Congress made a significant change in the law when it passed the First Step Act in 2018.  As is relevant here, the First Step Act amended § 924(c) so that the 25-year mandatory minimum for a subsequent § 924(c) offense can only be imposed if the offense occurs after the conviction for the first offense is final; for a subsequent § 924(c)(1)(A)(ii) offense committed before the first § 924(c) conviction becomes final, the First Step Act requires a consecutive sentence of at least seven years.  Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (2018); 18 U.S.C. § 924(c); *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020).  This statutory change does not apply retroactively.  *Jordan*, 952 F.3d at 174.

Mr. Alston-Currie committed the offense underlying his first § 924(c) conviction on January 20, 2013, and he committed the offense underlying his second § 924(c) conviction on January 27, 2013.  Doc. 54 at 1.  He pled guilty to both offenses on the same date:  September 27, 2013.  Minute Entry 09/27/2013.

If Mr. Alston-Currie was convicted and sentenced only for the two § 924(c) crimes under today's laws, he would be subject to a seven-year mandatory minimum sentence on each § 924(c) conviction to run consecutively to each other.  In other words, the statutory minimum for both crimes would be 14 years, not 32 years.  The statutory maximum of life is not affected.  18 U.S.C. § 924(c); Doc. 109 at 1.

## III. Other Relevant Facts

Mr. Alston-Currie committed most of the armed robberies and attempted armed robberies when he was 27 years old and a few after he turned 28. Doc. 109 at 3. He is now 40 years old. *Id.*

Before the robberies, Mr. Alston-Currie's criminal history was short but serious. In 2002, at age 16, he killed a person and received a 114- to 146-month sentence for second degree murder. *Id.* at ¶ 214. He was released in March 2012 and began committing the crimes of conviction less than a year later, while on state post-release supervision. *Id.*

Mr. Alston-Currie's childhood was traumatic. His parents had substance abuse problems, *id.* at ¶¶ 226–227, and he was sexually abused as a child. *Id.* at ¶ 230. Around age 8, he was removed from his mother's home and placed in foster care. *Id.* At age 11, he joined the Crips street gang. *Id.* at ¶ 231. He began using drugs and alcohol at age 13. Doc. 179 at 2.

## IV. Procedural History

In November 2021, Mr. Alston-Currie filed a motion for compassionate release, primarily asserting that the statutory sentencing changes to § 924(c) convictions constitute an extraordinary and compelling circumstance that supports a reduction in his sentence. Doc. 178, as supplemented Doc. 189. The Court appointed counsel and ordered development of the record. Docs. 180, 184, 188.

In 2022, the Court denied the motion for a sentence reduction to time served, finding it "would not reflect the seriousness of his offenses, provide just punishment,

deter similar conduct, or show respect for the law." Doc. 196 at 10. The Court otherwise denied the motion without prejudice to a renewed motion, noting that "[w]hile at the moment the Court sees no reason for a sentence reduction at all," that might look different after the Sentencing Commission provided guidance and as the case law developed. *Id.* at 11.

Mr. Alston-Currie has now filed a new motion for compassionate release, Doc. 210, relying on the Sentencing Commission's policy statement that took effect in November 2023 and that governs whether a defendant has established extraordinary and compelling reasons for a sentence reduction. He once again relies on the First Step Act's change in § 924(c) stacking. *Id.* at 4–6. He also asks the Court to consider his participation in a gang dropout program as an extraordinary and compelling circumstance under U.S.S.G. § 1B1.13(b)(5). *Id.* at 11–12. He seeks a reduction in his sentence to 240 months. *Id.* at 10. The government responded in opposition to Mr. Alston-Currie's motion, Doc. 214, and Mr. Alston-Currie filed a reply brief. Doc. 215. The Court has considered the entire record.[4]

## V. Compassionate Release Standard

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart.") (cleaned up). A court may modify a sentence only when a provision in the Federal Rules

---

[4] Mr. Alston-Currie also filed a motion to seal. Doc. 213. That motion will be addressed by the Magistrate Judge in a separate order as time permits.

of Criminal Procedure or a statute expressly permits. *See* 18 U.S.C. § 3582(c); *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021). Section 3582(c)(1)(A), often colloquially if somewhat inaccurately called the "compassionate release" provision, is one such statutory provision. *See Jenkins*, 22 F.4th at 169.

For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement when invoked by the government. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). Section 3582(c)(1)(A) also requires that extraordinary and compelling reasons merit a reduction in sentence, that the reduction is consistent with any applicable policy statements issued by the Sentencing Commission, U.S.S.G. § 1B1.13, and that the relevant § 3553(a) sentencing factors weigh in favor of relief. *United States v. Burleigh*, No. 23-6254, ---F.4th----, 2025 WL 2165938, at *4 (4th Cir. July 31, 2025); *United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025). Even if a court finds extraordinary and compelling reasons support release, it has discretion to deny a defendant's motion after balancing the applicable § 3553(a) factors. *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

Effective November 1, 2023, the U.S. Sentencing Commission amended its policy statement to cover motions for sentence reduction filed by defendants and to expand the list of extraordinary and compelling reasons sufficient to support such a motion under § 3582(c)(1)(A). U.S.S.G. § 1B1.13. As is relevant here, the new policy statement authorizes a finding of extraordinary and compelling reasons if: (1) the defendant is serving an unusually long sentence; (2) the defendant has served at least 10 years of the sentence; and (3) an intervening change in law has produced a "gross disparity between

7

the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6). In the Fourth Circuit, an intervening change in law can be an extraordinary and compelling circumstance even if it is not retroactive. *United States v. McCoy*, 981 F.3d 271, 287–88 (4th Cir. 2020); *United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) (reaffirming *McCoy* after the policy statement and holding that "[n]onretroactive changes in law remain relevant when a court has to decide when and how to modify a sentence.").[5]

The policy statement also permits a court to find extraordinary and compelling circumstances for "any other circumstance or combination of circumstances that . . . are similar in gravity" to the first four reasons listed in the policy statement. U.S.S.G. § 1B1.13(b)(5). But the policy statement makes clear that this provision is not available to consider a change in the law. U.S.S.G. § 1B1.13(c) ("Except as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement.").

## VI.    Discussion

### A. Exhaustion

Mr. Alston-Currie says he has exhausted his administrative options, Doc. 210 at 2, and the government does not contend otherwise. Doc. 214 at 5 n.3; *see also Muhammad*,

---

[5] While not relevant to the Court's analysis, other circuit courts disagree. *See, e.g.*, *United States v. Rutherford*, 120 F.4th 360, 363 (3d Cir. 2024); *United States v. Austin*, 125 F.4th 688, 693 (5th Cir. 2025); *United States v. Black*, 131 F.4th 542, 546 (7th Cir. 2025). The Supreme Court has taken up *Rutherford* and another case to consider this question. No. 24-820, 2025 WL 1603603 (U.S. June 6, 2025); *Carter v. United States*, No. 24-860, 2025 WL 1603599 (U.S. June 6, 2025).

16 F.4th at 130 (holding that courts should not address the exhaustion requirement if it is not invoked by the government).

## B. Extraordinary and Compelling Circumstances

### 1. U.S.S.G. § 1B1.13(b)(6) – Change in Law

As is relevant here, extraordinary and compelling circumstances exist when the defendant has served over 10 years, the sentence he is serving is unusually long, and there has been an intervening change in law that has produced a gross disparity between the sentence being served and the sentence likely to be imposed if he was sentenced today. U.S.S.G. § 1B1.13(b)(6). Mr. Alston-Currie has spent about 12 years in federal custody. *See* Doc. 109 at 2.

As the Court has previously noted, the policy statement does not define what constitutes an "unusually long sentence," nor does it define a "gross disparity." *United States v. Martin*, No. 11-CR-48-2, 2025 WL 1092723, at *5 (M.D.N.C. Apr. 11, 2025). Both questions are factual and require comparison to baselines that can be difficult to ascertain. Courts determine an appropriate sentence based on a myriad of factors that vary from case to case, making it hard to know what a "usual" sentence is and making comparisons between cases challenging. Without knowing the range of what is "usual," one cannot tell if a sentence is "unusual." Similarly, determining the sentence likely to be imposed now, against which one determines whether there is a "gross disparity," is not necessarily straightforward.

Recalculating someone's guideline range or mandatory minimum does not always tell the whole story. It does not take into account, for example, whether the plea

9

agreement would have been different or whether the court would have imposed an above-guidelines sentence.

This is true in Mr. Alston-Currie's case. As noted *supra*, had he been sentenced based on two § 924(c) counts today, the second § 924(c) conviction would carry a seven-year mandatory minimum sentence rather than a 25-year mandatory minimum sentence. Thus, the statutory minimum penalty for his two § 924(c) convictions would be 14 years as opposed to 32 years. This would be on top of a sentence for the conspiracy, which had a guideline range of 168 to 210 months, Doc. 109 at 40, and for which he received a 72-month sentence. Doc. 54 at 2. If that 72-month sentence was reimposed along with the mandatory minimums for the other two counts, he would be facing a potential total sentence of 20 years rather than 38 years. But as the Court previously held, a 20-year sentence for all of these crimes "is a hypothetical result that verges on fantasy." Doc. 196 at 8.

A 20-year sentence would not be the "usual" or "likely" sentence for a defendant who was involved in 15 armed robberies and three attempted armed robberies and who engaged in the violence established here. Doc. 109 at ¶¶ 24–41. Mr. Alston-Currie threatened victims at gunpoint, struck multiple victims, shot and seriously injured someone, and endangered many lives. *Id.* He did all of this after serving a lengthy prison term for second-degree murder. *Id.* at ¶ 214. He was facing multiple § 924(c) charges, and the plea agreement proffered by the government was based on the understanding that the defendant would receive at least 32 years, which was then the statutory minimum. There has been no showing that the government would offer that plea agreement today,

10

and in the Court's experience after almost 15 years in this district, such a plea offer would be highly unlikely. Even if it were offered and accepted by the Court, the Court would not have imposed a sentence below the guideline range on the conspiracy count.

The Fourth Circuit recently held that a defendant "demonstrated extraordinary and compelling reasons for release given that, were he sentenced today, he would benefit from the First Step Act's anti-stacking provision." *United States v. Smith*, No. 24-6726, 2025 WL 1864767, at *3 (4th Cir. July 7, 2025) (cleaned up); *see also United States v. Johnson*, 143 F.4th 212, 215 & n.3 (4th Cir. 2025) (affirming district court's finding of extraordinary and compelling circumstances which was based in part on changes in § 924(c) stacking and in part on co-defendant sentences). In *Smith*, a jury convicted the defendant of eight crimes for his involvement in a drug trafficking operation. 2025 WL 1864767, at *1. His convictions included two counts of brandishing a firearm during a drug trafficking crime. *Id*. The Court sentenced him to 262 months for most of the crimes, followed by the stacked sentences required by § 924(c): seven years for the first brandishing count and 25 years for the second. *Id*. There was no plea agreement involved, and it was clear that he would benefit from the First Step Act reduced stacking provision.

Mr. Alston-Currie's situation is different. Certainly if Mr. Alston-Currie were sentenced today under the same plea agreement, the mandatory minimum sentence would be lower. But that hypothetical sentence ignores important individual circumstances in Mr. Alston-Currie's case, including the terms of the plea agreement, the expectations of

11

the parties, and the seriousness of Mr. Alston-Currie's crimes and criminal history, as previously discussed.

It also would ignore what the Court did when sentencing Mr. Alston-Currie. The court did give a substantial downward variance on the conspiracy sentence because of the length of the second 25-year consecutive sentence, varying from the guideline range of 168 to 210 months to 72 months. Doc. 54 at 2; Doc. 109 at 40. But the Court did not vary down further to a lower sentence on the conspiracy count, such as one month, which it could have done if it thought Mr. Alston-Currie's sentence was too long. *See Burleigh*, 2025 WL 2165938, at *5 (affirming denial of compassionate release where the district court found that the defendant would have likely received a similar sentence today because of individual circumstances even though the law had changed); *United States v. Moody*, 115 F.4th 304, 312 (4th Cir. 2024) (same).

This Court has recently found extraordinary and compelling circumstances and granted compassionate release motions in armed robbery cases involving pre-First Step Act stacked § 924(c) sentences. *See, e.g.*, *United States v. Berry*, No. 05-CR-118, 2024 WL 4466828 (M.D.N.C. Oct. 10, 2024); *United States v. Martin*, No. 11-CR-48-2, 2025 WL 1092723 (M.D.N.C. Apr. 11, 2025); *United States v. Hancock*, No. 07-CR-71-1, 2025 WL 2164041 (M.D.N.C. July 30, 2025). In those cases, the defendants were involved in many fewer crimes and presented other individual factors absent here, including having less serious criminal histories, engaging in less violent conduct, and being much younger when they committed the crimes. And in those cases, the sentences as reduced were still at least twenty years. *Berry*, 2024 WL 4466828, at *2, *8 (reducing sentence from 646

12

months to 314 months for involvement in two armed bank robberies); *Martin*, 2025 WL 1092723, at *2–3, *8 (reducing sentence from 288 months to 240 months for involvement in three armed robberies and one attempted armed robbery);[6] *Hancock*, 2025 WL 2164041, at *1 (reducing sentence from 477 months to 360 months for involvement in two armed robberies). Those cases are very different from Mr. Alston-Currie's case.

The Court agrees with the government that if this case arose today, it is likely that Mr. Alston-Currie's plea agreement would include at least one extra § 924(c) brandishing count and that the Court would not have varied below the 168- to 210-month guideline range for the conspiracy count. *See* Doc. 214 at 14. A likely sentence under these conditions would be somewhere around 420 to 462 months.[7] Even if Mr. Alston-Currie had entered the same plea agreement, the Court would likely have imposed a sentence in that range. For the crimes Mr. Alston-Currie committed, a sentence of 456 months is not unusual, nor is there a gross disparity between the sentence he is serving and the sentence he would receive today.

Mr. Alston-Currie relies on two cases in which courts have found an extraordinary and compelling circumstance based on § 924(c) stacking even though the defendants pled guilty to many fewer counts than they were facing. Doc. 215 at 1–2. First, he points to the facts in *McCoy*, in which the Fourth Circuit affirmed the district court's order granting

---

[6] The Court reduced Mr. Martin's sentence to 180 months, which was a 240-month sentence with a 25% downward departure for reasons not relevant here. *Martin*, 2025 WL 1092723, at *8.

[7] Three consecutive seven-year sentences is 252 months. Adding the previously-determined guideline range on the conspiracy comes to 420 to 462 months.

compassionate release where the defendant pled guilty to two of 12 armed robberies. 981 F.3d at 277. Next, he cites *United States v. Gayles*, in which a district court reduced the sentences of several defendants who pled guilty to two of over a dozen armed robberies. No. 17-CR-106, 2022 WL 414238 (E.D. Va. Feb. 10, 2022).

Both of these cases were decided before the policy statement took effect and are thus of limited assistance in evaluating extraordinary and compelling circumstances under the current framework. More importantly, in both cases, the defendants were several years younger than Mr. Alston-Currie at the times they committed the robberies, *id.* at *3; *McCoy*, 981 F.3d at 277; the nature and circumstances of their underlying crimes were different; and the courts considered the defendants' cumulative individual circumstances in finding an extraordinary and compelling reason. Finally, in *McCoy*, the Fourth Circuit emphasized that "not all defendants convicted under § 924(c) should receive new sentences" under § 3582(c)(1)(A). 981 F.3d at 287 (cleaned up). Courts "must make an individual assessment of the defendant's sentence and give full consideration to the defendant's individual circumstances." *Moody*, 115 F.4th at 312 (cleaned up) (quoting *McCoy*, 981 F.3d at 286).

### 2. U.S.S.G. § 1B1.13(b)(5) – Gang Dropout Program

Mr. Alston-Currie also contends that his participation in a gang dropout program constitutes an extraordinary and compelling circumstance under § 1B1.13(b)(5). Doc. 210 at 11–12. Subsection (b)(5) provides that reasons "similar in gravity" to the four identified extraordinary and compelling circumstances can authorize a sentence reduction. U.S.S.G. § 1B1.13(b)(5). While "[r]ehabilitation of the defendant alone" is

14

insufficient to constitute an extraordinary and compelling circumstance, 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d), "it may be considered as one factor among several" in evaluating a defendant's motion for compassionate release. *Davis*, 99 F.4th at 659; U.S.S.G. § 1B1.13(d).

At least one court has held that participation in a gang dropout program rises above rehabilitation and can stand alone as an extraordinary and compelling circumstance. *See United States v. Beres*, No. 18-CR-58, 2023 WL 8809320, at *2 (D. Mont. Dec. 20, 2023); *but see United States v. Chavez*, 757 F. Supp. 3d 585, 593–94 (S.D.N.Y. 2024) (including the gang dropout program in rehabilitation analysis). Assuming without deciding that this questionable assertion is so, the court in *Beres* had information showing that the dropout program required the defendant to "provide valuable information to the relevant federal agencies to combat gang activity" and that he did so at risk to his life. 2023 WL 8809320, at *2.

Mr. Alston-Currie has not provided meaningful information about his dropout program, let alone evidence that he faces any particular risk because of his participation in that program. *See United States v. Walter*, No. 96-CR-26, 2025 WL 1040835, at *4–6 (D. Alaska Apr. 8, 2025) (finding no extraordinary and compelling circumstance based on defendant's participating in gang dropout program and assistance to prison officials in gang disputes because defendant did not show any risk he faced); *United States v. Avila*, No. 02-CR-464-8, 2024 WL 4027973, at *2 (N.D. Ill. Sept. 3, 2024) (finding no extraordinary and compelling circumstance because defendant's gang disassociation did not "rise[] to the level of the comprehensive 'drop out' program" in *Beres*).

15

The Court commends Mr. Alston-Currie for his participation in a gang dropout program. But he has not provided sufficient evidence that his participation in this program or his rehabilitative efforts, alone or in combination with any other factor, constitutes an extraordinary and compelling circumstance. Even considering all the reasons Mr. Alston-Currie has identified in combination, he has not presented an extraordinary and compelling circumstance.

### C. § 3553(a) Factors

Even if extraordinary and compelling circumstances existed, the § 3553(a) factors counsel against release. When the Court denied Mr. Alston-Currie's previous motion for compassionate release, it stated that it was providing him "time to take further steps towards positive rehabilitation efforts and to avoid further disciplinary sanctions." Doc. 196 at 11. At the time, he had one disciplinary infraction since 2013. Doc. 192. Unfortunately, Mr. Alston-Currie has had several disciplinary infractions since then, including one this year. Doc. 214-2. These include possession of stolen property, disruptive conduct, giving or accepting money without authorization, multiple instances of phone abuse, refusing to work, fighting, and possessing an unauthorized item. *Id.* While his course work, participation in a gang dropout program, and creative writing efforts weigh in his favor, his disciplinary record from the past few years shows potential backsliding that is concerning and overshadows his positive rehabilitative efforts.

Additionally, Mr. Alston-Currie's crimes were serious and violent, and they warrant a significant sentence. A shorter sentence would not take into account that he was involved in 15 robberies and three attempted robberies, that he was armed with

16

firearms during those robberies, that he threatened victims with those firearms, sometimes a close range, that firearms were discharged during several of these robberies, and that at least one person was shot during a robbery. *See* Doc. 196 at 8. Nor would a shorter sentence take into account the fact that Mr. Alston-Currie committed these crimes soon after he had been released from prison for the commission of a murder or that he was under state supervision when he went on this violent spree of armed robberies.

Mr. Alston-Currie has only served about 12 years of his sentence, which is not close to a potentially appropriate sentence. Nor is the twenty-year sentence he seeks sufficient. The Court sees no reason for a sentence reduction at all. Should there be significant additional changes in the law that would qualify under the applicable policy statement, he may file a renewed motion.

It is **ORDERED** that the defendant's motion for compassionate release, Doc. 210, is **DENIED**.

This the 18th day of August, 2025.

_____
UNITED STATES DISTRICT JUDGE